**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | | |
|---|---|---|
| **ZACK ELLIS, GERONIMO PEREZ,** | § | |
| **ARTURO SALINAS, JARROD M. DANIEL,** | § | |
| **and KERRY TAWATER, individuals,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **vs.** | § | **CASE NO. 2:15-CV-00058-J** |
| | § | |
| **TRI-STATE OIL FIELD SERVICES, Inc.,** | § | |
| **a Texas Corporation, RICARDO "RICKY"** | § | |
| **CANTU, an individual, RICKY'S** | § | |
| **TOWING OF AMARILLO, LLC,** | § | |
| **a Texas limited liability company, KATRINA** | § | |
| **KINCAID, an individual, and CANTU** | § | |
| **TOWING, LLC, a Texas limited liability** | § | |
| **company,** | § | |
| | § | |
| **Defendants.** | § | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO ISSUE
<u>NOTICE TO THIS ACTION</u>**

PLAINTIFFS, through their undersigned attorneys, move this Court to issue notice to similarly situated employees of Defendants Tri-State Oil Field Services, Inc., Ricky's Towing, LLC, and Cantu Towing, LLC, Ricky Cantu and Katrina Kincaid, individuals (hereinafter referred to as "Defendants") informing them of the pendency of this action and of their right to consent to be party-plaintiffs in the action pursuant to 29 U.S.C. § 216(b). As set forth below, issuance of such notice will serve the interests of justice and help to ensure the fair and efficient adjudication of this controversy.

# I.  STATEMENT OF THE CASE

This is an action for unpaid wages brought pursuant to the Fair Labor Standards Act

("FLSA"), 29 U.S.C. § 216(b).  Plaintiffs, who worked in Defendants Tri-State Oil Field

Services, Inc., Ricky's Towing, LLC, and Cantu Towing, LLC, Ricky Cantu and Katrina

Kincaid's, facilities in Amarillo, Hereford and surrounding counties work locations in the Texas

panhandle, and others who work at defendants job locations and elsewhere allege that *inter alia*,

Defendant's "hourly work time" and their "shop time" method of  payment failed to compensate

them and others similarly situated for all of their hours of work.   Under the "shop time" method,

a worker is not paid the proper rate for time during which the employees are engaged in activities

such as changing oil, repairing truck and company equipment - including brake repair, fixing

flats, etc., working wrecks and generally moving oil rigs in connection with the work for which

they are employed, among other things among other items and other work off of the clock before

and after their shift and for time deducted from their hours worked for delays.  For example,

because of their reliance on the "shop time" pay system, Defendants do not keep track of, or pay

workers for, a number of compensable work activities such as time spent changing oil, repairing

trucks and related equipment – including brake repairs, fixing flats, etc. and working wrecks and

moving oil rigs in connection with the work for which they are employed, among other things

and for other work done off of the clock.

Because Defendants use the "shop time" and the changing of time cards to remove hours

worked from paid time method of payment at all of its facilities, Plaintiffs allege that these same

FLSA violations occurred with respect to all of Defendants' non-exempt hourly employees, and

certain misclassified individuals such as mechanics and truck drivers, laborers, not just those

who have "opted in" to this case, as well as all non-exempt hourly employees at Defendants'

other work locations that also use the "shop time" or "missing time" method of payment.

Accordingly, Plaintiffs have brought this action as an FLSA representative action on behalf of all

non-exempt employees similarly situated producing goods and services for commerce at the

work locations, operated by Defendants in Amarillo, Hereford, and related work place locations

in the Texas Panhandle, Texas.

To date no only one other individual has filed a consent to be party-plaintiffs in this case.

## II.  THE COURT IS AUTHORIZED TO ISSUE NOTICE

The FLSA authorizes a person to maintain an action on "behalf of himself and other

employees similarly situated." 29 U.S.C. § 216(b). Such actions cannot be brought as Fed. R.

Civ. P. Rule 23 class actions because by statute, an individual seeking to participate in an FLSA

action must give his or her written consent to be a party-plaintiff to the action. 29 U.S.C. §

216(b). Nevertheless, the Supreme Court has held that "district courts have discretion, in

appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential

plaintiffs." *Hoffman-La Roche, Inc. v. Sperling,* 493 U.S. 165, 169 (1989). In reaching this

conclusion, the Court noted that collective actions under § 216(b) allow plaintiffs "the advantage

of lower individual costs to vindicate rights by pooling of resources." *Id* at 170. The Court also

noted that the judicial system benefits from such collective actions "by efficient resolution in one

proceeding of common issues of law and fact arising from the same alleged discriminatory

activity." *Ibid.*   "These benefits, however, depend on employees receiving accurate and timely

notice concerning the pendency of the collective action, so that they can make informed decisions

about whether to participate." *Ibid.*

In determining whether to issue notice in an FLSA "collective action", courts have taken two approaches. One approach is typified by *Lusardi v. Xerox Corp.,* 99 F.R.D. 89, 93 (D.N.J. 1983) and *Sperling v. Hoffman-La Roche, Inc.,* 118 F.R.D. 392 (D.N.J. 1988) *aff'd and remanded* 493 U.S. 165 (1989).  In these cases, the court made a determination to issue notice early in the case based on the pleading, affidavits and/or declarations. Because only minimal evidence is available at this point, the determination to issue notice is made using a lenient standard that typically results in a conditional certification which may be modified (or decertified) if subsequent discovery indicates the initial determination was not correct. "Courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination." *Id* at 407. The second approach is typified by *Shushan v. Univ. of Colorado,* 132 F.R.D. 263 (D. Colo. 1990). This approach applies the usual Rule 23 certification requirements to FLSA collective actions with the sole difference being that class members must opt-in rather than opt-out.

Either approach has been found acceptable in the Fifth Circuit. *See Mooney v. Aramco Services Co.,* 54 F.3d 1207, 1216 (5th Cir. 1995) (discussing both approaches but declining to adopt one as preferable to the other). One factor does, however, strongly suggest that early issuance of notice based on the pleadings is the preferable approach.  In a Rule 23 class action, the mere filing of a class complaint tolls the statute of limitations for all members of the putative class, at least until the class certification decision is made. *American Pipe & Constr. Co. v. Utah,* 414 U.S. 538 (1974). Thus, there is no harm if the class certification determination is delayed until discovery on class issues is complete. It is not clear that the same tolling rule applies to FLSA collective actions. Plaintiff anticipates that Defendant will argue that there is no tolling in

an FLSA action until a worker actually files his or her consent to sue. Given that fact, delay in the issuance of notice may well cause putative FLSA class members to lose their claims to the statute of limitations.   Indeed, if Defendant's position on the statute of limitations prevails, every day that notice is delayed is a day of unpaid wages that is lost to limitations.   This potential limitations problem makes the need for an early determination of class status far more critical in an FLSA case than in a Rule 23 class action and argues in favor of the lenient pleadings standard set forth in the *Lusardi/Sperling* line of cases if discovery indicates the initial determination was not correct.

### III.  THIS ACTION SATISFIES THE *LUSARDI/SPERLING* STANDARD FOR ISSUANCE OF NOTICE

Plaintiffs have clearly alleged that Defendants' non-exempt hourly workers "were together the victims of a single decision, policy, or plan infected by discrimination", *Sperling,* 118 F.R.D. at 407, in that all such workers were subjected to Defendants' "shop time" payment policy, all workers have had their actual hours worked reduced unilaterally by the defendants by taking time away to reduce paid time and/or work off the clock. It is that uniform policy which results in the FLSA violations at issue -- i.e. non-payment for activities occurring before and after the normal shift, "shop time" pay, work time reductions and work off the clock.  Plaintiffs at Defendants' work locations are paid on a "shop time" basis or are not paid for some work off the clock or have their actual number of hours arbitrarily reduced, and they are not paid for any of the time spent changing oil, repairing truck and company equipment – including brake repair, fixing flats, etc.,  generally overseeing the work locations in which they are employed, among other things. In these circumstances, where all workers have been subjected to the same challenged policy, the issuance of FLSA notice is appropriate. *Sperling,* 118 F.R.D. 392.

## IV.  THIS ACTION SATISFIES THE REQUIREMENTS OF RULE 23

Rule 23(a) requires a plaintiff to show: (1) that the proposed class is sufficiently numerous to make class treatment efficient; (2) that the class shares common questions of law or fact; (3) that the representative plaintiff is typical of the class; and (4) that the named plaintiff will adequately represent the members of the class.  Rule 23(a)(3) (which is most analogous to the wage claim presented here) also requires that the common questions of law or fact predominate over any individual questions and that class treatment is superior to other methods of adjudicating the controversy. All of these requirements are met.

**(1) Numerosity:**

Potentially, there are more than 50 plus individuals who are suffering the "shop time" and all defendants employees have their actual number of hours worked reduced or altered by the defendants FLSA violations alleged by Plaintiffs.   Plainly, this number more than satisfies the numerosity requirement.

**(2) Common Questions:**

All of the core questions of fact presented by this case are common to Defendants' non-exempt hourly workers.  Plaintiffs' pleadings indicate that all non-exempt hourly workers are paid on a "shop time" or altered or a reduced time basis or are not paid for work performed off the clock.  These pleadings also allege that Defendants did not keep track of the time in controversy -- i.e. time spent changing oil, repairing truck and company equipment – including brake repair, fixing flats, etc., and generally overseeing the work place in which they are employed, and other work performed off of the clock either before the shift started or after the shift has stopped or not paid for unforseen delays.   The central legal question presented --

whether these activities are compensable under the FLSA -- is also common to the non-exempt hourly workers.

### (3) Typicality:

Plaintiffs' claims, and on behalf of all others similarly situated, are typical of the members of the class. They, like the other members of the putative class, were subject to Defendants' "shop time" and work time reductions in their pay policy and policy of not paying non-exempt hourly workers when working off the clock and, as a result, the workers were not compensated for the activities at issue here.

### (4) Adequacy of Representation:

Generally the question of adequacy of representation focuses on the competency of Plaintiffs' counsel and any conflicts of interest that may affect the class representative. *General Telephone v. Falcon,* 457 U.S. 147,157 n 13 (1982). Plaintiffs' counsel are experienced litigators familiar with FLSA collective actions generally and with the issues in this case in particular, having litigated other  FLSA cases, such as, the case styled *Gloria O. Boyd v. Long Mfg. N.C., Inc.*, District Court of Denton County, Texas, in the year 1975, wherein Philip R. Russ represented Long Mfg., N.C., Inc., *Rick McLain v. Castro County*, Texas, previously pending in the 64th District Court of Castro County, Texas, in 1994, all of which cases were FLSA cases in which Philip R. Russ was counsel of record.

Apart from counsel's previous experience with FLSA litigation cited above, Plaintiffs' counsel assisted in negotiating the successful settlement of *Rivera v. Monfort ,* C.A. 2-96-CV-441 (N.D. Tex.), which said settlement this Court approved. The class size in *Rivera* was 1769 of which Plaintiffs' counsel directly represented 171.  Further, Plaintiffs' counsel was counsel of

record for a class of plaintiffs in *Anderson v. Pilgrim's Pride Corp.*, Cause No. 9:98-CV-7, U.S.D.C., E.D. of Texas, Lufkin Division. Said cause of action was a FLSA class action suit, through which over 1899 plaintiffs are represented by Philip R. Russ.  A "Motion for Mail Out", such as the one sought herein, was granted in *Anderson*.

Plaintiffs' counsel, Law Offices of Philip R. Russ, has represented and tried *Raquel Berumen, et al v. Excel,* Cause No. 2:97-CV-216-J (N.D. Tex.).  Plaintiffs' counsel Philip R. Russ represented 3107 plaintiffs in *Jose Angel Zapata, et al v. Excel,* Cause No. 2:97-CV-420-J (N.D. Tex.), 1973 in *Tsai-Son Nguyen, et al v. Excel,* Cause No. 2:98-CV-202-J, 275+/- in *Valverde v. Monfort,* Civil Action No. 2:00-CV-083-J (N.D. of Tex., August 8, 2000, and 87+/- in *Baldridge, et al v. SBC Communications, Inc., et al*, CA No. 5:04-CV-071-J, was pending in the U.S.D.C., Northern District of Texas, Lubbock, Division, which later settled in all these cases the Court granted a mail out.

a)      Cause No. 2:08-CV-027-J; *Sellers, et al v. Hobbs*, U.S.D.C., N.D. of Texas, Amarillo Division which resulted in an Agreed Judgment of $250,000.00 in favor of the plaintiffs.

b)      Cause No. 5:06-CV-89; *Antee, et al v. Pilgrim's Pride Chicken Corp.*, U.S.D.C., W.D. of Arkansas, El Dorado Division; consolidated with other cases by the MDL panel Cause No. 1:07-CV-1832; U.S.D.C., W.D. of Arkansas, El Dorado Division, recently settled for $10,000,000.00 and approved by the Bankruptcy Court;

c)      Cause No. 2:09-CV-92-J, *Jimenez, et al v. Cub Janitorial, et al*, U.S.D.C., N.D. of Texas, Amarillo Division, settled;

d)      Cause No. 2:09-CV-083-J, *Cassie Pointer, et al v. Verla Varnell Barrett, d/b/a Big V. Construction*, U.S.D.C., N.D. of Texas, Amarillo Division, settled; and

e)      Cause No. 2:11-CV-30-J, *Robert Wayne Leathers v. Gray County, Texas, et al*, U.S.D.C., N.D. of Texas, Amarillo Division, pending and set for mediation in December 2011.

More recently, counsel for plaintiff herein participated as defense counsel in Cause #2: 14-CV-178-J, *Rodea, et al v. Acropolis and Danish Patel*, U.S.D.C., N.D. of Texas, Amarillo Division in which a settlement was reached at mediation.  A mail-out pursuant to a Joint Motion was granted.

Counsel for Plaintiffs have adequate experience, expertise, and resources to represent a class such as this.

### (5) Predominance of Common Questions and Superiority of Class Treatment:

Because this is a challenge to a class-wide corporate policy (i.e. the policy to use "shop time" to regularly reduce, alter or take away recorded paid time and not to pay for the work activities occurring before and after "shop time" and off the clock) all of the liability issues raised by Plaintiffs are common to the class. Most of Defendants' affirmative defenses are also common to the class -- e.g. that the time involved is not compensable under the FLSA, that it is excludable under the *de minimus* doctrine, and that it acted in good faith in failing to pay for the disputed time.

Although the calculation of damages may present some individual issues, that is typical of class actions and does not preclude a finding that common questions predominate. *See Rules Advisory Committee Notes to 1966 Amendments to Rule 23,* 39 F.R.D. 69, 103 (1966).

Rule 23(b)(3) lists several considerations pertinent to deciding whether class treatment is the superior method of litigating the controversy. All of these factors favor treating this as a collective action:  First, the individual workers at the defendants work location and at all locations would most likely have no interest in controlling the prosecution of separate actions. To the contrary, the relatively small amount of money owed to each worker makes prosecution of an

individual suit impractical. It is only through a collective action that workers can, realistically, assert the FLSA rights at stake here. Second, there are no other cases pending by or on behalf of the putative class members that would be interfered with if this case proceeds as a collective action. Third, since the same "shop time" and worked hours alteration and/or reduction FLSA issue is presented for all workers at all of the defendants work locations as it relates to non-exempt hourly employees and time worked off the clock by said workers, concentrating litigation in one Court is certainly the most efficient way to deal with this controversy. Fourth, there are no particular difficulties which will be encountered in litigating this case on behalf of workers at the defendants work locations as they are operated as a single business enterprise.  Although there may be minor differences between the various employees which may affect the amount of damages due to workers, the essential liability questions are the same for all employees at the above listed defendants work locations.  These liability issues can and should be decided in one court, rather than having multiple Courts reach possible inconsistent decisions in constant rulings on those issues.

The superiority of including all employees at all of the above listed at all defendants work locations in one action is confirmed by the way other Courts have handled gang-time FLSA violations by way of example in meat cutting facility cases similar to "shop time" or not paying for work off the clock in this case.  For example, in *Saunders v. John Morrell & Co.,* 1991 WL 529542 (N.D. Iowa 1991), the Court dealt with Morrell's gang-time policy in plants in Sioux City, Iowa, Sioux Falls, South Dakota, and Arkansas City, Kansas. Similarly, the challenge to gang-time FLSA violations in *Reich v. IBP,* 820 F. Supp. 1315, 1318, (D. Kansas, 1993), involved 23,580 workers at eleven plants in six different states. The fact is, when a challenge is brought to

a company-wide policy, fairness and efficiency counsel in favor of adjudication of the

controversy on a company-wide basis. *See Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142, 147 (4th

Cir. 1992) (ordering district court to issue FLSA notice to 27,000 employees of the defendant).

*Zapata, et al v. Excel,* Cause No. 2:97-CV-420-J (N.D. Tex.), dealt with 15,500 plus employees

of the defendant Excel and notice was sent to all employees of the Friona and Plainview, Texas

plants and the Dodge City, Kansas, plant.  Plaintiffs believe and allege that "shop time" is a first

cousin of "gang time".

One final consideration weighs strongly in favor of issuing notice to the defendants'

workers. "The FLSA is a remedial statute that has been construed liberally to apply to the furthest

reaches consistent with Congressional intent." *Mitchell v. Lublin, McGaughy & Assoc., 358* U.S.

207, 211 (1959). Issuance of notice "promote[s] both the Court's interest in judicial economics as

well as the broad remedial purposes of the (FLSA) by affording potential plaintiffs the maximum

opportunity to vindicate their statutory rights." *Johnson v. American Airlines,* 531 F. Supp 957**,**

961 (N.D. TEX. 1982). *See also Braunstein v. Eastern Photographic Laboratories, Inc.,* 600

F.2d 335, 336 (2d Cir. 1978) (notice "comports with the broad remedial purpose of the Act,

which should be given a liberal construction, as well as with the interest of the courts in avoiding

multiplicity of suits.").

There is a special need to issue notice in this case to accomplish the remedial purposes of

the FLSA.  Plainly, part of the problem is that workers are ignorant of their FLSA rights or

unable to afford individual actions to vindicate their rights. The best way to correct this situation

and ensure that the remedial purposes of the FLSA are carried out is to issue notice to workers

informing them of their right to participate in a collective FLSA enforcement action. That was

why the Supreme Court authorized the issuance of notice in *Sperling* and it is difficult to imagine

a more appropriate case than this one for the issuance of such notice. If the defendants herein  do

not seek to profit from its workers' lack of knowledge and genuinely believes that its "shop time"

time and/or by altering or reducing paid time because of delays as a system of pay is lawful, then

it should have no objection to informing its workers of their right to join in this FLSA action.

Either way, Plaintiffs' motion to notify affected workers at all defendants' work locations should

be granted.

### V.  JOINT EMPLOYEES - JOINT BUSINESS ENTERPRISE

Joint employment means that an individual is employed by two or more employers at the

same time[1].  Over the years since the FLSA's enactment both the DOL, in its regulation and

opinion letters, and the courts have defined who is a "joint employer" by setting forth a number

of different and varying factors.

### 1. DOL Activity

#### a. Regulations

In 1958 the DOL drafted Part 791 of the Code of Federal Regulations ("CFR"), titled "Joint Employment Relationship Under The Fair Labor Standards Act of 1938."  The purpose of this regulation was "to make available in one place the general interpretations of the Department of Labor pertaining to the join employment relationships under the Fair Labor Standards Act of 1938."[2]

The DOL divided its definition of "joint employment" into two subsections, Section

791.2(a) and (b). 29 CFR Section 791.2(a) provides:

---

[1] Department of Labor, Wage and Hour Div., Fact Sheet #35: "Joint Employment and Independent Contractors Under the Migrant and Seasonal Agricultural Worker Protection Act," at 1. (revised July 2008).

[2] 29 C.F.R. §791.1

"A single individual may stand in the relation of an employee to two or more employers at the same time under the Fair Labor Standards Act of 1938, since there is nothing in the act which prevents an individual employed by one employer from also entering into an employment by one employer from also entering into an employment relationship with a different employer.  A determination of whether the employment by the employers is to be considered joint employment or separate and distinct employment for purposes of the act depends upon all the facts in the particular case."[3]

Regarding this factual determination, the regulation explains:

"If all the relevant facts establish that two or more employers are acting entirely independent of each other and are completely disassociated with respect to the employment of a particular employee, who during the same workweek performs work for more than one employer, each employer may disregard all work performed by the employee for the other employer (or employers) in determining his own responsibilities under the Act.

The regulation further states:

On the other hand, if the facts establish that the employee is employed jointly by two or more employers, i.e., that employment by one employer is not completely disassociated from employment by the other employer(s), all the employee's work for all of the joint employers during the workweek is considered as one employment for purposes of the Act.  In this event, all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the act, including the overtime provisions, with respect to the entire employment for the particular workweek.  In discharging the joint obligation each employer may, of course, take credit toward minimum wage and overtime requirements for all payments made to the employee by the other joint employer or employers."[4]

In 29 CFR Section 791.2(b), the DOL set forth three specific situations in which a joint

employment relationship with be considered to exist:

"Where the employee performs work which simultaneously benefits two or more employers, or works for two or more employers, or works for two or more

---

[3] 29 C.F.R. §791.2(a)

[4] *Chao v. A-One Medical Services, Inc.,* 346 F.3d 908, 8 WH Cases 2d 1865 (9th Cir. 2003), cert denied, 541 U.S. 1030, 9 WH Cases 2d 1056 (2004).

employers at different times during the workweek, a joint employment relationship generally will be considered to exist in situations such as:

(1)     Where there is an an arrangement between the employers to share the employee's services, as, for example, to interchange employees; or

(2)     Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or

(3)     Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer."[5]

Despite the fact that Part 791 was first drafted in 1958 and amended in 1961, few of the cases deciding "joint employment" status have relied upon it in reaching a decision.

### b. Wage and Hour Opinion Letters:

The DOL's Wage and Hour Division (W&H) has issued several opinion letters applying its regulation and adding other factors to the joint employment analysis.

For example, in a Non-Administrator letter issued on May 11, 2001, the "W&H" concluded that where private duty nurses were hired by patients or their representatives to provide care to patients while they were in the hospital, and where the hospital was legally required to provide certain oversight of the private duty nurses and the responsibility for the care of the patient remained with the hospital, the hospital was a joint employer of the nurses.[6] Relying on 29 C.F.R. Section 791.2(b), the W&H stated that the relevant factors in determining joint employment were:

(1) the power to control or supervise workers or work performed;

---

[5] 29 C.F.R. §791.2(b); see *Zachary v. ResCare Okla., Inc.,*, 471 F. Supp. 2d 1175 (N.D. Okla. 2006).

[6] WH Opinion Letter (May 11, 2011), 2001 WL 1558966.

(2) the power, whether alone or jointly, directly or indirectly, to hire, fire or modify employment conditions of individuals;

(3) the permanency and duration of the relationship;

(4) the level of skill involved;

(5) whether the worker's activities are an integral part of overall business operations;

(6) where the work performed and what equipment is used; and,

(7) who performed payroll and similar functions.

The "W&H" Division concluded that "because the ultimate question is one of economic dependency the factors are not to be applied as a checklist, but rather the outcome must be determined by a qualitative rather than quantative analysis.  The "W&H" Division, relying on 29 C.F.R. Section 791.2, concluded based on "all of the facts in the particular case" that the health aides were jointly employed by the nursing facility and the referral agencies when they provided home health care.

*Individuals (Corp. Officers, Managers, Supervisors) who are "Employers":*

The FLSA defines the term "Employer" broadly to include "any person acting directly or indirectly" in the interest of an employer in relation to any employee.[7]  Furthermore, an individual who acts directly or indirectly in the interest of an employer in relation to an employee may be subject to individual liability under the FLSA.[8]  Therefore, a corporate officer manager, supervisor, or participating shareholder may be named as a defendants in an FLSA cause of

---

[7] 29 U.S.C. §203(d).

[8] 29 C.F.R. §791.2(b)(2).

action where that individual is responsible in whole or in part for the alleged violation.[9]  Ricardo "Ricky" Cantu and Katrina Kincaid are just such individuals who control the operations, make decisions about payroll and at a time Ricky Cantu was running for public office, Katrina Kincaid claimed she owned Cantu Towing, LLC, see Exhibit "R" hereto, rather than Ricky Cantu.

The key consideration in determining individual liability is whether the individual has exerted sufficient control over significant aspects of the employer's employment policies.[10]  This is a factual matter to be determined on a case-by-case basis.  The courts have held that managerial responsibilities and substantial control of he terms and conditions of the employees' work create employer status under which an individual such as a corporate officer or manager may be liable.[11]  Such a corporate officer is jointly and severally liable along with the corporation for FLSA violations.  Ricardo "Ricky" Cantu and Katrina Kincaid are just such corporate officers and managers who handle the day to day decisions of running the various entities and make regular adjustments to the workers pay and controlled the rate and method of payment to the workers.[12]

## JOINT ENTERPRISE

In 1961, Congress amended the FLSA to add "an enterprise" standard of coverage; this

---

[9] *Donovan v. Agnew*, 712 F.2d 1509, 1514, 26 WH Cases 466 (1st Cir. 1983).

[10] *Donovan v. Tavern Talent & Placements*, 1986 WL 32746, at *7 (D. Colo. Jan. 8, 1986).

[11] *Donovan v. Sabine Irrigation,* 695 F.2d 190, 194-195, 25 WH Cases 1142 (5th Cir.), cert. denied, 463 U.S. 1207, 26 WH Cases404 (1983)

[12] *Williams v. Henagan*, 595 F.3d 610 (5th Cir. 2010).

coverage was expanded in 1966[13] and 1974.[14]  A central purpose of these amendments was to Strengthen and expand the scope of the FLSA by eliminating the type of fragmented coverage that had existed under test.[15]  The enterprise standard created coverage for an employer's employees based on the interstate activities of the business as a whole rather than the activities of the individual employee.  Amendments to the Act in 1966 further expanded enterprise coverage.  In *Maryland v. Wirtz*, 392 U.S. 183, 18 WH Cases 445 (1968), the Supreme Court upheld the constitutionality of the enterprise scheme as a valid exercise of the power of Congress under the Commerce Clause.

Under the enterprise test, in order to determine whether a business constitutes an enterprise that is covered under Section 3(s)(1) of the FLSA, one must first determine whether the business falls under the definition of "enterprise" in Section 3(r)(1).  According to that definition:

> "Enterprise" means the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units including departments of an establishment operated through leasing arrangements, but shall not include the related activities performed for such enterprise by an independent contractor.

An "enterprise" under Section 3(r) is covered by the FLSA if it meets the requirements under Section 3(s)(1) to be an "enterprise engaged in commerce or in the production of goods for commerce).

---

[13]  29 U.S.C. §203(r).

[14]  29 U.S.C. §203(r)(s).

[15]  *Montalvo v. Tower Life Bldg.*, 426 F.2d 1135, 1139, 19 WH Cases 472 (5th Cir. 1970).

Section 3(s)(1) provides that such an enterprise:

> "(A)(i) has employees engaged in commerce or in the production of goods for commerce, or that . . . has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and
> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated);
> (B) is engaged in the operation of a hospital, an institution primarily engaged in the care of the sick, the aged, or the mentally ill or defective who reside on the premises of such institution, a school for mentally or physically handicapped or gifted children, a preschool, elementary or secondary school, or an institution of higher education (regardless of whether or not such hospital, institution, or school is public or private or operated for profit or not for profit); or
> (C) is an activity of a public agency."[16]

In order to constitute an "enterprise" under Section 3(r) of the FLSA, a business must be engaged in "related activities" that are performed for a "common business purpose," through "common control" or a "unified operation."  The defendants in the case at bar meet this requirement, their employees are controlled by Ricky Cantu and Katrina Kincaid, the employees perform services and work for all three entities and they are used interchangeably when directed by the individual defendants.

**"Unified Operation" or "Common Control"**

In order meet the Section 3(r) requirements to be an "enterprise," "related activities" performed for a "common business purpose" must be conducted through a "unified operation" or through "common control."[17]  The existence of either unified operation or common control alone

---

[16] 29 U.S.C. §203(r)(1).

[17] 29 U.S.C. §203(r).

is sufficient,[18] and these terms apply only to performance of the related activities themselves and not to other activities that might be performed by the enterprise.

In the case at bar, Ricky Canty and Katrina Kincaid control every aspect of the conduct of the enterprise, they all operate out of the same location, they direct the employees to perform work or services for all entities, tell the employees where to perform the work and all bookkeeping and payroll is handled at the same location by Ricky and/or Katrina. In fact, control may exist in instances of limited or no common ownership (which is not the case here); the requisite analysis is fact-dependant.[19]

Defendants Tri-State, Cantu Towing and Ricky's Towing coupled with the unified control exerted by Ricky Cantu and Katrina Kincaid over these entities clearly demonstrate that they are a common business enterprise for purposes of the FLSA.

## VI.  FLSA VIOLATION(S) ARE TYPICAL FOR THE WHOLE CLASS

Plaintiffs are similarly situated to all other putative plaintiffs. Plaintiffs are also similarly situated with regards to each other. Plaintiffs bring this suit for themselves and for all similarly situated non-exempt hourly employees. The issues in question in this cause for each employee are the same for all employees regardless of geographic location. A substantial number of employees perform the same activities as Zack Ellis, Geronimo Perez, Arturo Salinas, Jarred M. Daniel and Kerry Tawater complained of in this suit and arrive before the shift and remain after the shift and work off of the clock before and after the start of "shop time" and alterations, and off the clock. (See declarations of Zack Ellis (will supplement), Arturo Salinas, Geronimo Perez

---

[18] 29 C.F.R. 779.215(a).

[19] 29 C.F.R. §779.223; see, *Schultz v. Falk*, 439 F.2d 340, 19 WA Cases 949 (4th Cir.).

(will supplement), Jerrod M. Daniel, Kerry Tawater (will supplement) and Don't Brown,

attached in the Appendix as Exhibit "E," Exhibit "F" and Exhibit "H" in the Appendix as Exhibit

hereto).

## VII. THE PROPOSED NOTICE

Plaintiffs have attached a proposed notice to their motion designed to inform workers of

the pendency of this action and of their right to join in it. This notice is similar to a Rule 23 class

notice except that it requires workers to opt-in rather than opt out and is similar to other FLSA

"collective action" notices issued by this Court. *See, e.g.* FLSA notice issued in *Valverde v.*

*Monfort, Inc.,* CA No. 2:00-CV-083-J (N.D. Tex.) (a copy of this notice is attached to Plaintiffs'

motion as Exhibit "I") and in *Octavuis Anderson, et al v. Pilgrim's Pride Corporation*, CA No.

9:98-CV-7(E.D. Tex.) (a copy of this notice is attached to Plaintiffs' motion as Exhibit "J"). *See*

*also Sperling,* 118 F.R.D. at 415-416, and *Baldridge, et al. v. SBC Communications, Inc., et al*,

CA No. 5:04-CV-071-J (N.D. Tex.) (a copy of this notice is attached to Plaintiffs' motion as

Exhibit "K").

The notice contains a blank for the cut-off date for filing a response. The Supreme Court

in *Hoffman-La Roche* made clear that use of a cut-off date is appropriate. Plaintiffs propose that

the date be 120 days after Defendants provide Plaintiffs with the list of names, addresses and

social security numbers of the individuals who are to receive the notice. One hundred twenty

days is reasonable in light of the fact that workers may have questions regarding the suit which

they will want answered before responding and in light of the fact that, at least in some cases,

addresses will be incorrect and letters will have to be forwarded.

The proposed notice directs workers who want to join the suit to send the Consent To Join form to the Law Offices of Philip R. Russ or The Law Firm of Jerry D. McLaughlin, counsel for Plaintiffs, who would then file them with the Court. This procedure, which was adopted by the Court in *Sperling,* 118 F.R.D. at 416, is designed to save the Clerk's office from having to deal with numerous individual filings. If the Court would prefer that the responses be mailed directly to the Clerk, that portion of the notice is easily modified.

## VIII.  MECHANICS OF ISSUING NOTICE

As with Rule 23 class actions, the costs of issuing notice should, at least initially, be born by Plaintiffs' counsel.  Plaintiffs' counsel are willing to pay for and effectuate issuance of the notice by first class mail to the last known address of each of the workers in the defined group. To assist in issuing the notice, Defendants should be ordered to produce the names, addresses, and/or last known address, telephone numbers and social security numbers of its employees to Plaintiffs.  *See Hoffman-La Roche,* 493 U.S. at 170. In addition, Plaintiffs propose that Defendants post the notice in four prominent places at each of its facilities.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs' motion for issuance of notice to similarly situated employees of Defendants should be granted.

Respectfully submitted,


LAW OFFICES OF JERRY D. MCLAUGHLIN
Jerry D. McLaughlin, SBN 13743300
1200 S. Western, Suite 1000
Amarillo, Texas 79109
806-371-9110 - Telephone
806-373-9029 - Facsimile

- and -

LAW OFFICES OF PHILIP R. RUSS
2700 S. Western, Suite 1200
Amarillo, Texas 79109
(806) 358-9293 - Telephone
(806) 358-9296 - Facsimile

BY:  _/s/ Philip R. Russ_____
Philip R. Russ Bar No. 17406000

Attorneys for Plaintiffs


## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of March, 2015, I electronically filed the foregoing "Memorandum In Support Of Plaintiffs' Motion To Issue Notice To This Action" with the Clerk of the Court for the Northern District of Texas, by using the CM/ECF system which will send a notice of electronic filing to the following CM/ECF participants:

Darrell R. Carey
Law Office of Darrell R. Carey
300 15th Street
Canyon, Texas 79015
Tel. 806-655-4529
Fax 806-355-7250
lawofficeofdarrellcarey@gmail.com


BY:  _/s/ Philip R. Russ_____
Philip R. Russ Bar No. 17406000